ORAL ARGUMENT NOT YET SCHEDULED

CASE NOS. 22-1287, 22-1293
**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

J.G. KERN ENTERPRISES, INC.,
Petitioner/Cross-Respondent,

vs.

NATIONAL LABOR RELATIONS BOARD,
Respondent/Cross-Petitioner

_____

ON PETITION FOR REVIEW
FROM ORDER OF THE NATIONAL LABOR RELATIONS BOARD
371 NLRB No. 91 (Apr. 20, 2022)

_____

**FINAL BRIEF OF PETITIONER
(DEFERRED APPENDIX)**

_____

Maurice Baskin
Emily Carapella
Littler Mendelson, PC
815 Connecticut Ave, N.W., Suite 400
Washington, D.C. 20006
T: (202) 842-3400
F: (202) 842-0011
mbaskin@littler.com
ecarapella@littler.com

*Attorneys for Petitioner J.G. Kern
Enterprises, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Petitioner J.G. Kern Enterprises, Inc. ("J.G. Kern") is a manufacturing site that machines close tolerance powertrain/drivetrain components along with other assemblies to service the automotive industry. J.G. Kern does not have any parent companies and no publicly-held companies own any portion of J.G. Kern stock.

*/s/Maurice Baskin*
Maurice Baskin

## PETITIONER'S CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

**A.    Parties and Amici.**

1.    J.G. Kern is the Petitioner and Cross-Respondent.

2.    The National Labor Relations Board ("Board" or "NLRB") is the Respondent and Cross-Applicant for Enforcement.

3.    The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 228 ("UAW" or "Union") was the Charging Party in the administrative proceedings underlying this appeal.

**B.    Rulings Under Review.**

J.G. Kern seeks review of the Decision and Order of the National Labor Relations Board issued against J.G. Kern on April 20, 2022, reported at 371 NLRB No. 91 (April 20, 2022), and the Order Denying Motion for Reconsideration issued against J.G. Kern on October 21, 2022, in NLRB Case Nos. 07-CA-231802, 07-CA-

245744, and 07-CA-252759, which are captioned as *J.G. Kern Enterprises, Inc. and Local 228, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO*.

**C.     Related Cases.**

J.G. Kern is aware of no related cases before this or any other court.


*/s/ Maurice Baskin*
Maurice Baskin

# TABLE OF CONTENTS

**PAGE**

I.    JURISDICTION ........................................................................1

II.   ISSUES PRESENTED ............................................................1

III.  RELEVANT STATUTES AND REGULATIONS .......................2

IV.  STATEMENT OF THE CASE AND FACTS .........................2

    A.   Factual Background.......................................................2

    B.   The ALJ's Decision ......................................................6

    C.   The Board's Decision ..................................................7

    D.   J.G. Kern's Petition for Review and the Board's Cross Application for Enforcement ...............................9

V.    SUMMARY OF ARGUMENT ....................................................9

VI.   STANDING ..............................................................................11

VII.  STANDARD OF REVIEW ......................................................11

VIII. ARGUMENT............................................................................13

    A.   The Board's Unfair Labor Practice Findings Were Insufficient to Satisfy the Requirements of *Master Slack* ....................................13

        1.   The *Master Slack* Standard ..................................13

        2.   Application of the *Master Slack* Standards to the Facts of this Case ..................................17

            a.   The Alleged Delay in Bargaining Was Insufficient to Violate the Act and, in Any Event, Did Not Meet the *Master Slack* Threshold..................................19

            b.   The Board Acted Arbitrarily When It Concluded That J.G. Kern Refused to Bargain over a Union-Administered Health Plan, But Such Refusal Again Failed to Satisfy the *Master Slack* Standard.......21

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

c.    The Board Arbitrarily Concluded J.G. Kern Violated the NLRA by Providing Some, If Not All, Information That the Union Requested, Which Again Failed to Meet the *Master Slack* Criteria............23

3.    Even if Unfair Labor Practices Occurred During the Bargaining Process, J.G. Kern's Decision to Withdraw Recognition from the Union at the End of the Certification Year Was Lawful under Master Slack...............25

B.    The Board's Decision to Apply Whisper Soft to Retroactively Extend the Certification Year, Instead of Applying the Later Decided, Contrary Precedent of *Master Slack*, Violated this Court's Precedents and the APA.......................................................26

1.    Applying *Whisper Soft* Without Overruling *Master Slack* Creates "Two Lines" of Inconsistent Precedent, Contrary to the APA....................................................................................26

2.    The Board Further Erred in Relying on *Whisper Soft* Because the Ninth Circuit Reversed and Vacated the Board's Decision and Order in That Case ...............................32

3.    Other Cases Relied on by the Board for its Retroactive Extension of the Certification Year in This Case Are Inapposite ...............................................................................35

4.    That the Union Filed Unfair Labor Practice Charges Against J.G. Kern Does Not Make This Case Analogous to Those Involving a Prospective Extension of the Certification Year by Prior Remedial Order...........................38

5.    The Board's Adoption of a Novel Theory Not Advocated by the General Counsel Caused a Manifest Injustice and/or Violated J.G. Kern's Due Process Rights....................40

--ii.--

# TABLE OF CONTENTS
(CONTINUED)

PAGE

C.    This Court Should Not Enforce the Affirmative Bargaining
Order that the Board Issued Because in Issuing It, the Board
Ignored Substantial Record Evidence and Deviated from
Precedent .............................................................................................41

IX.    CONCLUSION.............................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABM Onsite-Servs.-West, Inc. v. NLRB*,
   849 F.3d 1137 (D.C. Cir. 2017)..............................................................11, 31, 34

*Action on Smoking & Health v. Civil Aeronautics Board*,
   713 F.2d 795 (D.C. Cir. 1983)...........................................................................32

*Allentown Mack Sales & Serv. v. NLRB*,
   522 U.S. 359 (1998)..........................................................................12, 19, 22, 43

*Bellagio, LLC v. NLRB*,
   854 F.3d 703 (D.C. Cir. 2017)....................................................................12, 41

*BPH & Co. v. NLRB*,
   333 F.3d 213 (D.C. Cir. 2003)...........................................................................39

*Brooks v. NLRB*,
   348 U.S. 96 (1954)......................................................................................26, 27

*Brooks*,
   98 NLRB 976 (1952) ........................................................................................27

*Bryant & Stratton*,
   140 F.3d 169 (2d Cir. 1998) ..................................................................36, 37, 38

*Bryant & Stratton Bus. Inst.*,
   321 NLRB 1007 (1996) ....................................................................................36

*Champion Home Builders*,
   350 NLRB 788 (2007) .................................................. 14, 15, 21, 27, 28, 29, 30

*Circus Circus Casinos, Inc. v. NLRB*,
   961 F.3d 469 (D.C. Cir. 2020)........................................... 11, 12, 31, 32, 37, 39

*Communications Workers of America v. NLRB.*,
   994 F.3d 653 (D.C. Cir. 2021).........................................................29, 30, 31, 32

*Denton County Elec. Coop., Inc.*,
   366 NLRB No. 103 (2018), *enf'd in relevant part*, 962 F.3d 161
   (5th Cir. 2020)..............................................................................15, 28

*E.I. Dupont De Nemours & Co.*,
   304 NLRB 792, and 802 (1991) ......................................................22

*Eltec Corp.*,
   286 NLRB 890 (1987) ......................................................................18

*Everport Terminal Servs. v. NLRB*,
   47 F.4th 782 (D.C. Cir. 2022).................................12, 19, 22, 32, 43

*Fred Meyer Stores, Inc. v. NLRB*,
   865 F.3d 630 (D.C. Cir. 2017)...........................................12, 19, 43

*Garden Ridge Mgmt.*,
   347 NLRB 131 (2006) ...................................................14, 15, 25, 28

*Gulf States Mfrs.*,
   287 NLRB 26 (1987) .................................................................15, 21

*Hawaiian Dredging Constr. Co., Inc.v. NLRB*,
   857 F.3d 877 (D.C. Cir. 2017).........................................................37

*Heartland Plymouth Court MI, LLC v. NLRB*,
   838 F.3d 16 (D.C. Cir. 2016)...........................................................34

*Horsehead Res. Dev. Co. v. NLRB*,
   154 F.3d 328 (6th Cir. 1998) ...........................................................20

*Indep. Elec. Contrs. of Houston, Inc. v. NLRB*,
   720 F.3d 543 (5th Cir. 2013) ...........................................................12

*Int'l Union, Sec. Police & Fire Professionals of Am. v. Faye*,
   828 F.3d 969 (D.C. Cir. 2016)..............................................19, 33, 34

*Lamar Hotel*,
   137 NLRB 1271 (1962) ....................................................................37

*Leggett & Platt, Inc. v. NLRB*,
   988 F.3d 487 (D.C. Cir. 2021).......................................20, 31, 43, 44

*Lexus of Concord, Inc.*,
  343 NLRB 851 (2004) ...............................................................14, 25

*Loomis Armored US, Inc.*,
  364 NLRB No. 23 (2016) ...................................................................40

*Mar-Jac Poultry Co. Inc.*,
  136 NLRB 785 (1962) ......................................................................37

*Master Slack*,
  271 NLRB 78 (1984) ................. 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 20, 21, 23,
                24, 25, 26, 27, 28, 29, 30, 31, 34, 36, 37, 38, 40 ,41

*MCPc Inc. v. NLRB*,
  813 F.3d 475 (3d Cir. 2016) ...............................................................29

*NBCUniversal Media, LLC v. NLRB*,
  815 F.3d 821 (D.C. Cir. 2016) ...........................................................18

*New Madrid Nursing Center*,
  1997 NLRB LEXIS 259 (1997) ..................................................34, 40

*NLRB v. CNN Am., Inc.*,
  865 F.3d 740 (D.C. Cir. 2017) ...................................................20, 31, 43

*NLRB v. Commerce Co.*,
  328 F.2d 600 (5th Cir. 1964) .............................................................37

*NLRB v. New Vista Nursing & Rehab.*,
  870 F.3d 113 (3d Cir. 2017) ......................................................32, 33

*Pa. State Corr. Officers Ass'n v. NLRB*,
  894 F.3d 370 (D.C. Cir. 2018) ...........................................................21

*Point Park Univ. v. NLRB*,
  457 F.3d 42 (D.C. Cir. 2006) .............................................................18

*Quazite Div. of Morrison Molded Fiberglass Co. v. NLRB*,
  87 F.3d 493 (D.C. Cir. 1996) .............................................................16

*Rav Truck & Trailer Repairs v. NLRB*,
  997 F.3d 314 (D.C. Cir. 2021) .....................................................28, 32, 42

*Renal Care of Buffalo*,
  347 NLRB 1284 (2006) ...............................................................15, 21

*Retail Clerks Local 1059 v. NLRB*,
  348 F.2d 369 (D.C. Cir. 1965) ............................................................11

*SCA Servs. of Georgia, Inc.*,
  275 NLRB 830 (1985) ...............................................................18, 19

*Scomas v. Sausalito, LLC v. NLRB*,
  849 F.3d 1147 (D.C. Cir. 2017) ..........................................................42

*Tenneco Auto. v. NLRB*,
  716 F.3d 640 (D.C. Cir. 2013)............................... 13, 14, 15, 16, 25, 38

*The Cincinnati Steel Castings Co.*,
  86 NLRB 592 (1949) .........................................................................23

*The Daily News v. NLRB*,
  979 F.2d 1571 (D.C. Cir. 1992).......................................20, 22, 31, 32

*Tramont Mfg., LLC v. NLRB*,
  890 F.3d 1114 (D.C. Cir. 2018) ..........................................................12

*Tritac Corp.*,
  286 NLRB 522 (1987) ...............................................................15, 28

*Veritas Health Servs. Inc.*,
  356 NLRB No. 137 (2011) ..................................................................35

*Veritas Health Servs. v. NLRB*,
  895 F.3d 69 (D.C. Cir. 2018)............................. 13, 14, 16, 26, 27, 35, 36, 37, 38

*Vincent Indus. Plastics, Inc. v. NLRB*,
  209 F.3d 727 (D.C. Cir. 2000)....................................................42, 43

*Whisper Soft Mills*,
  267 NLRB 813 (1983), *vacated*, 754 F.2d 1381 (9th Cir. 1984) ........7, 8, 10, 26,
                        28, 29, 30, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41

*Whisper Soft Mills, Inc. v. NLRB*,
  754 F.2d 1381 (9th Cir. 1984) ...........................................................32

*Williams Enters. v. NLRB,*
   956 F.2d 1226 (D.C. Cir. 1992) ............................................................16

*Windsor Redding Care Ctr., LLC v. NLRB,*
   944 F.3d 294 (D.C. Cir. 2019) .............................................................28

**STATUTES**

5 U.S.C.
   § 554(b)(3) ..........................................................................................12

29 U.S.C.
   § 157.........................................................................................39, 42, 43
   § 158........................................................................................................1
   § 158(a)(1) .........................................................................................6, 7
   § 158(a)(5) ...........................................................................6, 7, 17, 20
   § 160........................................................................................................1
   § 160........................................................................................................1
   § 160(f)................................................................................................11
   § 160(j).................................................................................................39

National Labor Relations Act of 1935,
   29 U.S.C. §§ 151, *et seq* ("NLRA") .......................... 1 2, 6, 9, 11, 15, 16, 18, 21,
                                                      23, 24, 25, 28, 29, 36, 38, 39, 40, 41, 42, 43

# **GLOSSARY**

ALJ:          Administrative Law Judge Paul Bogas

APA:          Administrative Procedure Act

JA:           Deferred Joint Appendix

NLRA:         National Labor Relations Act

NLRB or Board:     National Labor Relations Board

UAW or Union:    Charging Party Local 228, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

Petitioner or J.G. Kern:   Petitioner J.G. Kern Enterprises, Inc.

General Counsel:   The General Counsel for the National Labor Relations Board

GC Ex.:       General Counsel's Exhibit

Resp. Ex.:    J.G. Kern's Exhibit

Tr:           Transcript of ALJ hearing

## I.     JURISDICTION

This is a petition for review from the Board's Decision and Order in Case Nos. 07-CA-231802, 07-CA-245744, and 07-CA-252759, reported at 371 NLRB No. 91 (April 20, 2022) (the "Board's Decision") and the Board's Order Denying Motion for Reconsideration in Case Nos. 07-CA-231802, 07-CA-245744, and 07-CA-252759, dated October 21, 2022 (the "Order Denying Reconsideration"), as to which the Board had jurisdiction under Sections 8 and 10 of the NLRA; and a cross-application for enforcement by the Board. This Court has jurisdiction over both the petition and the cross-application pursuant to Section 10 of the NLRA, 29 U.S.C. § 160. The Board's Decision is final with respect to all parties. J.G. Kern timely filed its Petition for Review on November 7, 2022, and the Board cross-appealed for enforcement on November 18, 2022.

## II.     ISSUES PRESENTED

1.     Whether the Board's Decision must be denied enforcement because it departed from controlling precedent under the NLRA when it found that J.G. Kern violated the NLRA by withdrawing recognition of the Union.

2.     Whether the Board's Decision must be denied enforcement because it departed from controlling precedent and ignored substantial evidence in the record in concluding that J.G. Kern violated the NLRA by delaying bargaining at the start of the certification year.

1

3.     Whether the Board's Decision must be denied enforcement because it departed from controlling precedent and ignored substantial evidence in the record in concluding that J.G. Kern violated the NLRA by refusing to bargain over a Union-administered health plan.

4.     Whether the Board's Decision must be denied enforcement because it departed from controlling precedent and ignored substantial evidence in concluding that J.G. Kern violated the NLRA by not complying with the Union's information request.

5.     Whether the Board's Decision must be denied enforcement because it violated J.G. Kern's due process rights.

6.     Whether the Board's Decision must be denied enforcement because it departed from controlling precedent in this Court in issuing an affirmative bargaining order.

## III.    RELEVANT STATUTES AND REGULATIONS

Pertinent sections of the NLRA and the APA are set forth in a Statutory Addendum attached to the end of this brief, in accordance with Circuit Rule 28(a)(5).

## IV.    STATEMENT OF THE CASE AND FACTS

### A.    Factual Background

On October 3, 2018, the Board certified the Union as the bargaining representative for unit employees at J.G. Kern's manufacturing facility for

2

automotive parts in Sterling Heights, Michigan. (JA296-97; NLRB Dec. 20-21 (ALJ)). On October 15, 2018, the Union contacted J.G. Kern to start collective bargaining negotiations and the parties subsequently scheduled sessions for November. (JA296-97, 6-9; NLRB Dec. 21-22 (ALJ), Tr. 16-19). J.G. Kern was subsequently compelled to cancel the scheduled November bargaining because its negotiator Jonathan Sutton was unavoidably out of the country (in Guam) and was selling his house in Houston. (JA29-30; Tr. 65-66). However, Mr. Sutton indicated he would be available to meet with the Union during December of 2018. (JA12; Tr. 22).

Specifically, the Union's representative testified during the ALJ hearing that "[w]e received communication from Jonathan Sutton on December 12th, stating that he was busy moving into his new house and he would not be available until after December 17th. And at that point in time, *we rescheduled* for January 10th, 2019." (*Id.*) (emphasis added). In other words, J.G. Kern indicated it was available to begin the bargaining as early as December 17, two months after the Union first requested bargaining, and did not cause a delay of "almost three months", contrary to the Board's later finding. (JA12; Tr. 22, *compare* JA297-98; NLRB Dec. 21-22 (ALJ)).

It is undisputed that the parties held their first bargaining session on January 10, 2019. (JA13; Tr. 23). Thereafter, the parties met for bargaining two days a month for every month from January through October 2019. (JA41, 298; Tr. 82; NLRB

Dec. 22 (ALJ)). The parties reached thirty-five tentative agreements by October 2, 2019. (JA286, 21; NLRB Dec. 10 (Dissent), Tr. 35).

During bargaining, the Union requested information about the insurance and other benefits unit employees received as well as the costs J.G. Kern incurred in providing the benefits. (JA14, 31, 298; Tr. 24, 67; NLRB Dec. 22 (ALJ)). In response, J.G. Kern provided information about the cost of various benefit plan options to employees. (JA298, 37; NLRB Dec. 22 (ALJ), Tr. 76). J.G. Kern did not provide information about the costs it incurred in providing benefits. (JA277-78, 35; NLRB Dec. 1-2, Tr. 74). In an email dated April 10, 2019, negotiator Sutton declined to provide the employer's cost of providing health benefits, in the absence of any demonstrated relevance to the Union's bargaining demands. (JA100, 35-36; GC Ex. 6, Tr. 74-75). J.G. Kern further indicated its intent to "stick with the present plan" for benefits. (JA100, 35-36; GC Ex. 6; Tr. 74-75). Nevertheless, negotiator Sutton also indicated "he would look at whatever the Union put forward" (JA36; Tr. 75) and the parties continued to negotiate over the health benefits at subsequent bargaining sessions. (JA26, 36; Tr. 57, 75). Contrary to the ALJ and Board's later finding (JA277, 300; NLRB Dec. 1 n.5, 24 (ALJ)), the quoted language in

Respondent's letter did not refuse to consider any union proposal; it merely stated J.G. Kern's intent to stick with the present plan.[1]

On November 22, 2019, J.G. Kern received an employee petition containing 205 signatures - an overwhelming majority (over 80% according to HR Director Sue Allen's undisputed testimony) of the bargaining unit employees - which indicated that the employees no longer wanted the Union to represent them. (JA44, 155, 286, 300; Tr. 88; Resp. Ex. 5; NLRB Dec. 10 (Dissent), 24 (ALJ)).[2] Based on this petition, the Respondent withdrew recognition of the Union and ceased bargaining on Nov. 25, 2019, nearly 14 months after the Union was certified. (JA114; GC Ex. 15). The parties stipulated that "there was no allegation" that J.G. Kern had "overtly solicit[ed], assist[ed], or otherwise interfere[d] with the formulation, preparation, or promulgation," of the employee petition. (JA300, 178; NLRB Dec. 24 (ALJ); Jt. Ex. 1). The withdrawal of recognition occurred more than 10 months after the claimed delay in bargaining ended; 7 months after the claimed refusal to consider the union's

---

[1] Negotiator Sutton testified that he did not want to concede willingness to adopt a union benefit plan so early in the negotiation, analogizing to a common bargaining tactic such as selling a car, in which a buyer does not want to start negotiations at too high a price. The ALJ misconstrued Sutton's analogy as somehow inappropriate to collective bargaining. (JA36, 299; Tr. 75; NLRB Dec. 23 (ALJ)).

[2] As noted in Member Ring's dissenting opinion, the 205 signatures were nearly double the number of ballots cast in favor of the Union in the 2018 election. (JA295; NLRB Dec. 19 n.31 (Dissent) (citing the published tally of ballots).).

benefit plan; and 4 months after the claimed refusal to share costs information. (*See* record entries listed above; *see also* JA295; NLRB Dec. 19 (Dissent)).

**B.     The ALJ's Decision**

The Union filed unfair labor practice charges against J.G. Kern and the Regional Director for Region 7 of the NLRB issued an initial complaint, a first consolidated complaint, and a second consolidated complaint. (JA296; NLRB Dec. 20 (ALJ)). The second consolidated complaint alleged that J.G. Kern violated sections 8(a)(1) and 8(a)(5) of the NLRA by refusing to meet with the Union and cancelling bargaining sessions; refusing to bargain about a union administered health benefit plan; failing to respond to a request for information from the Union about employee benefit plans; and withdrawing recognition of the Union. (*Id.*).

The ALJ concluded that J.G. Kern violated the NLRA by failing to meet with the Union for the first three months of its certification year, refusing to bargain over a Union-administered employee benefits plan, and failing to provide information about benefit plan costs that the Union requested. (JA286-87; NLRB Dec. 10-11 (Dissent)). The ALJ further concluded that J.G. Kern unlawfully withdrew recognition of the Union, applying Board precedent *Master Slack*, 271 NLRB 78, 84 (1984), to conclude that J.G. Kern's unfair labor practices during the certification year tainted the Union's loss of majority status. (JA287; NLRB Dec. 11 (Dissent)).

### C.    The Board's Decision

J.G. Kern filed exceptions to the ALJ's decision. (JA277; NLRB Dec. 1). The Board nevertheless adopted the ALJ's findings that J.G. Kern violated Sections 8(a)(5) and 8(a)(1) of the NLRA by delaying the start of bargaining, refusing to bargain over a Union-administered benefit plan, and failing to respond to the Union's request for information about the cost of existing benefit plans. (*Id*.).

The Board further affirmed the ALJ's finding that J.G. Kern violated Sections 8(a)(1) and 8(a)(5) of the NLRA by withdrawing recognition of the Union, but the Board expressly declined to apply the ALJ's reasoning in reaching that result. (*Id*.). Rather, instead of applying *Master Slack* to determine whether J.G. Kern's unfair labor practices tainted the Union's loss of majority support, the Board relied on an "alternative argument" that the General Counsel never raised, applying a case called *Whisper Soft Mills*, 267 NLRB 813, 816 (1983), *vacated*, 754 F.2d 1381 (9th Cir. 1984) [hereinafter *Whisper Soft*], a "rationale [that] has not always been invoked."[3] Based solely on *Whisper Soft*, the Board concluded that the Union's certification year was "retroactively" extended because J.G. Kern delayed bargaining, and from that (previously unlitigated) premise concluded that J.G. Kern erred by withdrawing

---

[3] Notably, the language upon which the Board relied in the General Counsel's answering brief appeared in its discussion of remedies and never cited to *Whisper Soft* (or any other authority). (JA273; GC Br. 19). In contrast, in responding to J.G. Kern's exceptions, the General Counsel applied *Master Slack*. (JA269; GC Br. 15).

recognition of J.G. Kern during the certification year that the Board extended retroactively through the same Decision. (JA277-79; NLRB Dec. 1-3).

As a remedy, the Board extended the Union's certification year for an additional six months and ordered J.G. Kern to respond to the Union's request for cost information about benefit plans and bargain with the Union. (JA285; NLRB Dec. 9).

In dissent, Member Ring criticized the Board for applying *Whisper Soft*. (JA286; NLRB Dec. 10). Specifically, Member Ring disagreed with the Board majority for failing to apply *Master Slack* or reconcile its Decision with controlling precedent. (*Id.*) ("There was really no question what precedent applied. The majority sets all this aside."). He further criticized the Board majority for engaging in circular reasoning:

> [T]he choice of standard dictates the outcome. Apply *Whisper Soft*, and the withdrawal of recognition is unlawful; apply *Master Slack*, and the withdrawal is lawful if the Respondent proves actual loss of majority status….The case 'involve[s] extension of the certification year' as a result of the majority's decision to apply *Whisper Soft*.

(*Id.*). Member Ring further explained that under *Master Slack*, he would not have found that J.G. Kern unlawfully withdrew support from the Union. (JA295; NLRB Dec. 19 (Dissent)).

J.G. Kern subsequently moved for reconsideration of the Board's Decision, specifically objecting (among other things) to the Board's unilateral departure from

8

*Master Slack* in favor of the previously vacated, non-precedential *Whisper Soft* decision. The Board denied J.G. Kern's motion. (JA308; NLRB Dec. on Reconsideration 1).

### D.     J.G. Kern's Petition for Review and the Board's Cross Application for Enforcement

On November 7, 2022, J.G. Kern petitioned this Court for review of the Board's Decision and its denial of reconsideration. (Pet. for Review). On November 18, 2022, the Board filed a Cross-Application for Enforcement of the Board's Decision. (NLRB Cross-Application). J.G. Kern timely answered the Board's Cross-Application for Enforcement on December 9, 2022. (Ans. to Cross-Application).

## V.     SUMMARY OF ARGUMENT

The Board's Decision stifles the express wishes of an overwhelming majority of the Petitioner's employees who signed a petition asking no longer to be represented by the Union. In order to achieve this result, the Board majority ignored record evidence and controlling precedent in concluding that J.G. Kern violated the NLRA by withdrawing recognition of the Union upon receipt of 205 employee signatures asking for such withdrawal. In particular, the Board adopted a theory of liability that is inconsistent with longstanding, controlling Board precedent known as *Master Slack* – a theory that the ALJ had not previously applied and that no party had previously advocated before the ALJ or the Board.

9

Ignoring *Master Slack*, the Board held that J.G. Kern committed unfair labor practices that somehow automatically and retroactively extended the Union's certification year, thereby rendering ineffective the showing of disaffection by J.G. Kern employees, applying a previously reversed and vacated 1983 order of the Board in *Whisper Soft*. The Board failed to properly analyze whether the Petitioner's alleged unfair labor practices actually tainted the employees' showing of disaffection, as was required under the longstanding *Master Slack* precedent prior to extending the certification year.

As recognized by the strong dissenting opinion in this case, the Board's ruling has created two tracks of inconsistent precedent and provides no guidance for regulated parties moving forward. The Board's failure to consistently apply its own precedents here constitutes arbitrary and capricious decision making in violation of the APA.

The vacated order and reversed decision in *Whisper Soft* should have no precedential value in this case. Further, even if *Whisper Soft* has any precedential value, more recent Board case law has superseded *Whisper Soft* over the last several decades, given that the Board has repeatedly ordered only prospective extensions of the certification year, adhering to the requirements of *Master Slack*, rather than automatic retroactive extensions relying on *Whisper Soft*.

10

The Board's extraordinary decision here also violated J.G. Kern's administrative due process rights by rejecting controlling precedent and instead applying the *Whisper Soft* decision *sua sponte*, without allowing the parties the opportunity to litigate the issue. The Board also violated the APA when it found that J.G. Kern delayed bargaining, refused to bargain, and did not sufficiently respond to an information request by the Union. Finally, the Board further violated the APA in issuing an affirmative bargaining order, contrary to controlling precedent in this Circuit.

For all of these reasons, this Court should grant J.G. Kern's Petition for Review and deny the Board's Cross-Application for Enforcement.

## VI.   STANDING

J.G. Kern has standing to seek review in this Court as an aggrieved party to a final order of the Board under 29 U.S.C. § 160(f). *See Retail Clerks Local 1059 v. NLRB*, 348 F.2d 369, 370 (D.C. Cir. 1965).

## VII.   STANDARD OF REVIEW

Board orders "cannot be enforced" without court approval under the NLRA. *See Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020). The APA further prohibits administrative agencies, including the NLRB, from issuing orders that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See ABM Onsite-Servs.-West, Inc. v. NLRB*, 849 F.3d 1137,

1142 (D.C. Cir. 2017) (quoting 5 U.S.C. § 706(2)(A)). Along these lines, "[j]udicial review of the Board's decisions and orders must evaluate both the Board's statements of law and application to the facts." *See Circus Circus Casinos, Inc.*, 961 F.3d at 475. Board findings that do not evidence reasoned decision making are arbitrary and capricious and therefore unenforceable. *See Everport Terminal Servs. v. NLRB*, 47 F.4th 782, 793-94 (D.C. Cir. 2022); *Circus Circus Casinos, Inc.*, 961 F.3d at 475; *Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1119 (D.C. Cir. 2018).

This Court also declines to enforce Board findings that lack the support of substantial evidence. *See Everport Terminal Servs.*, 47 F.4th at 793 (denying enforcement of Board's finding where Board "chose to ignore substantial evidence that undercut its conclusion"); *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) (denying cross-application for enforcement of Board decision that failed to "grapple with contrary evidence"); *see also Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 377-78 (1998).

Finally, Board orders that deny a regulated party due process are not enforceable. *See Bellagio, LLC v. NLRB*, 854 F.3d 703, 712-13 (D.C. Cir. 2017) (denying Board's cross application for enforcement where petitioner "never had an opportunity to defend itself against [a] charge because . . . it was not an issue in the case that was tried before the ALJ"); *see also Indep. Elec. Contrs. of Houston, Inc. v. NLRB*, 720 F.3d 543, 552 (5th Cir. 2013) (concluding that the Board denied

petitioner administrative due process, which rendered its findings "unenforceable" under 5 U.S.C. § 554(b)(3)).

## VIII.  ARGUMENT

### A.  The Board's Unfair Labor Practice Findings Were Insufficient to Satisfy the Requirements of *Master Slack*

#### 1.  The *Master Slack* Standard

It is settled law under the Act that an employer may withdraw recognition of a union when it has received objective evidence that the majority of its employees no longer support the union. *See Tenneco Auto. v. NLRB*, 716 F.3d 640, 648 (D.C. Cir. 2013). For the first year following the certification of a union, however, "the so-called 'certification year' bar" applies and the employer may not withdraw recognition of the union during that period. *Id.; see also Veritas Health Servs. v. NLRB*, 895 F.3d 69, 79 (D.C. Cir. 2018) [hereinafter *Veritas*]. In addition, the Board has held that withdrawal of recognition is improper and the period of bargaining may be extended where the employer is found to have committed certain unfair labor practices during (or after) the certification year, meeting a defined set of criteria. *Master Slack*, 271 NLRB at 84. But "not every unfair labor practice will taint evidence of a union's subsequent loss of majority support." *See Tenneco Auto.*, 716 F.3d at 648 (quoting *Lexus of Concord, Inc.*, 343 NLRB 851, 852 (2004)).

13

In *Master Slack*, the Board held that it must consider four factors in determining whether unfair labor practices have tainted the union's loss of majority support:

> (1) The length of time between the unfair labor practices and the employee petition; (2) the nature of the unfair labor practices, including whether they are of a nature that would cause a detrimental or lasting effect on the employees; (3) the tendency of the unfair labor practices to cause employee disaffection with the union; and (4) the effect of the unlawful conduct on the employees' morale, organizational activities, and membership in the union.

*See Tenneco Auto.*, 716 F.3d at 648-49 (internal citations omitted). In both the *Tenneco Auto*. and *Veritas* cases, this Court endorsed the *Master Slack* standard. *Id*.

Regarding the first *Master Slack* factor, the Board has declined to find taint where the period between unfair labor practices and the disaffection petition was as short as three to six months. *See, e.g.*, *Champion Home Builders*, 350 NLRB 788, 791-92 (2007); *Garden Ridge Mgmt.*, 347 NLRB 131, 134 (2006); *Lexus of Concord, Inc.*, 343 NLRB 851, 852 (2004). The alleged unfair labor practices here occurred four to ten months ahead of the withdrawal of recognition.

Regarding the second and third *Master Slack* factors, which this Court has evaluated concurrently (as "unfair labor practices that have lasting effects on employees are likely to be serious enough to cause disaffection with a union"), the Board has concluded that the discipline of union supporters, withholding benefits, or unilateral changes in the terms and conditions of employment are the kind of

unfair labor practices that weigh in favor of finding taint. *See Tenneco Auto.*, 716 F.3d at 649-50 (collecting cases). Conversely, the Board has concluded that a failure to respond fully to union information requests, where employees are not aware of the violation, does not tend to cause employee disaffection. *See Champion Home Builders*, 350 NLRB at 792; *Renal Care of Buffalo*, 347 NLRB 1284, 1297 (2006); *Gulf States Mfrs.*, 287 NLRB 26, 26 (1987).

Regarding the fourth *Master Slack* factor, the Board is required to articulate how unfair labor practices at issue cause subsequent employee disaffection. The Board has declined to find that the fourth factor weighs in favor of taint where the Board does not present evidence to support its claims under the fourth factor. *See Tenneco Auto.*, 716 F.3d at 650-51.

Prior to this case, the Board had repeatedly applied the *Master Slack* standards to unfair labor practices allegedly committed either during the original certification year or afterwards. *See Champion Home Builders Co.*, 350 NLRB at 788 (applying *Master Slack* when the employer withdrew recognition of the union at the end of the certification year, even though the employer did not meet with the union during the first three months following its certification); *Garden Ridge Mgmt.*, 347 NLRB at 134 (applying *Master Slack* where the employer withdrew recognition of a union after the certification year expired, even though the employer violated the NLRA by unreasonably failing to meet with the union to bargain during the certification year);

15

*see also Denton County Elec. Coop., Inc.*, 366 NLRB No. 103, at *8 (2018), *enf'd in relevant part*, 962 F.3d 161 (5th Cir. 2020) (applying *Master Slack* where employer withdrew recognition after certification bar expired, even though employer violated the NLRA during certification period); *Tritac Corp.*, 286 NLRB 522, 537-40 (1987) (applying *Master Slack* where employer withdrew recognition of union following certification year, even though it violated the NLRA during the certification year).

Notably, once the Board extends the certification year by remedial order, the employer may not *subsequently* withdraw recognition from the union during the remedially extended certification year. That is what occurred in *Veritas*. 895 F.3d at 79. This Court properly held there that the employer was required to comply with a prior order of the Board and the Court extending the certification year, and for that reason disallowed the employer's withdrawal of recognition during the remedially extended certification year. There was no such remedial order prior to J.G. Kern's withdrawal of recognition in the present case.

It is therefore settled in this Circuit (and others) that before the Board concludes unfair labor practices have tainted a union's loss of majority support, it must apply the test it articulated in *Master Slack*, which this Court has endorsed, in the absence of a pre-existing remedial order. *See Tenneco Auto.*, 716 F.3d at 648; *Veritas*, 895 F.3d at 79; *see also Williams Enters. v. NLRB*, 956 F.2d 1226, 1235

16

(D.C. Cir. 1992) (remanding question of whether unfair labor practices tainted employee petition when the Board "failed to consider factors similar to those used in its previous decisions"); *Quazite Div. of Morrison Molded Fiberglass Co. v. NLRB*, 87 F.3d 493, 496-97 (D.C. Cir. 1996) (concluding, where the Board did not apply the *Master Slack* factors or any other factors, that "the Board's decision that the employer's unfair labor practices caused the Union's loss of support [could not] be sustained").

In the present case, given the Board's findings that J.G. Kern withdrew recognition of the Union following the certification year and committed unfair labor practices during the certification year, the Board was likewise required to apply the *Master Slack* factors to determine whether the unfair labor practices caused the employee disaffection. The Board failed to apply its controlling precedent and the precedents of this Court, and for that reason alone the decision must be denied enforcement.

### 2. Application of the *Master Slack* Standards to the Facts of this Case

In the present case, as further discussed below, the Board found J.G. Kern committed three unfair labor practices violating its duty to bargain under Section 8(a)(5) of the Act: (a) unlawfully delaying the start of bargaining by three months; (b) refusing to negotiate over acceptance of a union administered health plan; and (c) failing to provide to the union the company's cost of providing health insurance.

But the Board refused to apply the *Master Slack* standard to any of these alleged unfair labor practices; therefore the Board waived its right to claim now that any of the unfair labor practices tainted the petition signed by an overwhelming majority of the J.G. Kern's employees. As numerous courts have held, a Board decision may be enforced, if at all, only on the grounds set forth in the Board's decision. *See Point Park Univ. v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)) ("We can only look to the Board's stated rationale. We cannot sustain its action on some other basis the Board did not mention."); *see also NBCUniversal Media, LLC v. NLRB*, 815 F.3d 821, 829 (D.C. Cir. 2016) (same).

For its part, J.G. Kern has throughout this proceeding contended that it bargained in good faith and did not violate the Act. But as further shown below, to the extent any unfair labor practices occurred, they did not rise to the level that the Board in similar cases under *Master Slack* has found sufficient to extend the certification year so as to deny the expressed wishes of the workforce to remove the Union's authority to represent them in further bargaining. Longstanding precedent requires the Board to "scrutinize the totality of [a party's] conduct" when evaluating whether the party has negotiated in good faith. *See Eltec Corp.*, 286 NLRB 890, 893 (1987) (finding totality of circumstances supported finding of "lawful hard

18

bargaining"); *see also SCA Servs. of Georgia, Inc.*, 275 NLRB 830, 834 (1985) (same).

> **a.    The Alleged Delay in Bargaining Was Insufficient to Violate the Act and, in Any Event, Did Not Meet the *Master Slack* Threshold**

The Board failed to adhere to its precedents and ignored substantial evidence when it concluded that J.G. Kern violated the NLRA by delaying bargaining by "three months" at the start of the certification year (JA301; NLRB Dec. 25 (Dissent)). Specifically, the Board ignored record evidence indicating that J.G. Kern was available to meet for bargaining in December, but the *Union* chose not to reschedule bargaining until January 2019. (JA12; Tr. 22).[4] Substantial evidence therefore does not support the conclusion that J.G. Kern delayed bargaining until January 2019. *See Everport Terminal Servs.*, 47 F.4th 782, 793 (D.C. Cir. 2022) (denying enforcement where the Board "ignored substantial evidence that undercut its conclusion"); *see also Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 377-78 (1998); *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) ("The Board's decision is arbitrary if it . . . "runs counter to the evidence before the agency."). The difference in timing is significant because J.G. Kern

---

[4] As noted above, the Union's representative, otherwise credited by the ALJ, testified that "[w]e received communication from Jonathan Sutton on December 12th, stating that he was busy moving into his new house and he would not be available until after December 17th. And at that point in time, *we rescheduled* for January 10th, 2019." (JA12; Tr. 22 (emphasis added)).

continued to negotiate with the Union for two months after the certification year had

passed, thereby making up for any actual delay in the start of bargaining.

Even if the Board had properly found J.G. Kern delayed the bargaining for a

month longer than actually occurred, the Board further erred in failing to consider

the initial delay in the context of the totality of the bargaining. *See SCA Servs. of*

*Georgia, Inc.*, 275 NLRB at 834 (noting that cancellation "in the context of

numerous other bargaining sessions does not prove that the [employer] failed to

satisfy its duty to meet at reasonable times with the union"); *see also Horsehead Res.*

*Dev. Co. v. NLRB*, 154 F.3d 328, 339 (6th Cir. 1998) (denying enforcement under

Section 8(a)(5) where employer did not engage in a "pattern of delay").

Here, the Board failed to engage in reasoned decision making when it found

that J.G. Kern unlawfully delayed bargaining at the beginning of the certification

year, (*see* JA277, 302; NLRB Dec. 1, 26 (ALJ)), ignoring the undisputed facts that

the parties bargained repeatedly throughout 2019 and tentatively agreed on thirty-

five items. (*see* JA286; NLRB Dec. 10 (Dissent)). In deviating from precedent

requiring the Board to consider the totality of circumstances in concluding whether

an employer has met its bargaining obligations, the Board failed to engage in

reasoned decision making. *See, e.g.*, *Leggett & Platt, Inc.*, 988 F.3d at 494

(enforcement denied for failure to consider the totality of circumstances in

bargaining); *NLRB v. CNN Am., Inc.*, 865 F.3d 740, 764 (D.C. Cir. 2017); *The*

*Daily News v. NLRB*, 979 F.2d 1571, 1578 (D.C. Cir. 1992).

But even if the Board was correct that J.G. Kern violated the Act by unlawfully delaying bargaining at the beginning of negotiations, the Board erred in failing to consider the length of time (ten months) that passed before the employees signed their decertification petition. Under the first *Master Slack* standard, the Board should have found this passage of time more than sufficient to vitiate the effects of the modest delay that occurred at the start of bargaining. *See Champion Home Builders*, 350 NLRB at 792; *Renal Care of Buffalo*, 347 NLRB at 1297; *Gulf States Mfrs.*, 287 NLRB 26, 26 (1987).

> **b.      The Board Acted Arbitrarily When It Concluded That J.G. Kern Refused to Bargain over a Union-Administered Health Plan, But Such Refusal Again Failed to Satisfy the *Master Slack* Standard**

The Board similarly erred in concluding that J.G. Kern violated the NLRA by refusing to bargain over a union-administered health plan.[5] (JA277; NLRB Dec. 1). To the contrary, the record evidence established that J.G. Kern's bargaining

---

[5] Contrary to the Board's contention that "the Respondent did not specifically except to the judge's factual finding that 'the Respondent never reversed its unlawful refusal to negotiate over *union-administered* employee benefits,'" (JA277; NLRB Dec. 1), J.G. Kern stated that "Exception is taken to the ALJ's finding that Respondent violated [the Act] when it stated that it would not consider any proposal on union-administered benefits," (JA239; J.G. Kern's Exceptions 2), which was sufficient to preserve its objections to the ALJ's finding. This Court does not require perfect specificity from exceptions. *See Pa. State Corr. Officers Ass'n v. NLRB*, 894 F.3d 370, 376-77 (D.C. Cir. 2018).

representative indicated "he would look at whatever the Union put forward." (*See id*.). The Board declined to credit the bargaining representative's testimony, in part based on the ALJ's conclusion that J.G. Kern "never reversed its unlawful refusal to negotiate over union-administered employee benefits." (*See id*.). [6] Yet such reasoning is circular, and in fact the parties did negotiate over benefits. (JA286; NLRB Dec. 10 (Dissent)). *See Everport Terminal Servs.*, 47 F.4th at 793.

The ALJ cited only one case to support his finding that a violation arose here because the employer "state[d] during contract negotiations it will refuse to even consider union proposals on a mandatory subject of bargaining." (JA302; NLRB Dec. 26 (ALJ) (citing *E.I. Dupont De Nemours & Co*., 304 NLRB 792, n.1 and 802 (1991)). That case is inapposite to the present facts. In *Dupont*, the employer demanded to engage in "piecemeal" negotiations, insisting that certain mandatory issues be dealt with in entirely separate negotiations, which was never the case here. J.G. Kern did not unlawfully refuse to "consider" the Union's health benefits proposal; instead it lawfully refused merely to "agree." The Respondent engaged in permissible hard bargaining over the health plan issue, and it is well settled the

---

[6] The Board also rejected Sutton's testimony because the ALJ found him generally not credible. (*See* JA277; NLRB Dec. 1 n.5). Yet, as the Board acknowledged, the ALJ never acknowledged Sutton's specific comment at issue here (and certainly never concluded that the specific comment was not credible). (*See id*.). In rejecting Sutton's testimony based on assumptions, the Board did not "draw . . . inferences from what the evidence fairly demands," as substantial evidence review requires. *Allentown Mack Sales & Serv.*, 522 U.S. at 377-78.

Board is not allowed to declare unlawful the refusal of an employer to agree to any specific contract term. *H.K. Porter* Co. *v. NLRB*, 397 U.S. 99, 108 (1970). Accordingly, the Board erred in concluding that J.G. Kern unlawfully refused to bargain over the Union-administered health plan proposal.

But again, even if the Board was correct in finding a technical bargaining violation to have occurred, the Board made no findings that the nature of such unfair labor practices caused any detrimental or lasting effect on the employees. In the absence of such findings, under *Master Slack*, the expressed wishes of the overwhelming majority of employees to decertify the Union must be respected.

            **c.**      **The Board Arbitrarily Concluded J.G. Kern Violated the NLRA by Providing Some, If Not All, Information That the Union Requested, Which Again Failed to Meet the *Master Slack* Criteria**

The Board also erred in concluding that J.G. Kern violated the NLRA by not providing all information that the Union requested about employee benefits. (*See* JA277; NLRB Dec. 1). It is well settled that an employer does not violate the NLRA merely because it does not respond to a union's information request "in the exact form requested by the [union]." *See The Cincinnati Steel Castings Co.*, 86 NLRB 592, 593 (1949).

J.G. Kern provided the Union with relevant information about the "cost to employees of various options under its health insurance plan." (*See* JA286; NLRB Dec. 10 (Dissent)) (emphasis removed)). Given that the Board has explained that

23

"we have not held, nor do we now hold, that the employer is obligated to furnish . . . information in the exact form requested by the [union]," the Board here deviated from precedent in concluding that J.G. Kern's response to the information request did not suffice. *See The Cincinnati Steel Castings Co.*, 86 NLRB at 593. The cases cited by the ALJ (JA301; NLRB Dec. 25 (ALJ)) also do not hold that refusals to provide employer cost information, in the absence of a claimed inability to pay, constitute *per se* violations of the duty to bargain.[7] Accordingly, because the Board did not engage in reasoned decision making when it concluded J.G. Kern violated the NLRA by delaying bargaining, refusing to bargain, and not responding to an information request, the Board's findings in this regard should not be enforced.

But for the same reasons as the previous unfair labor practice allegations, the Board's failure to apply the *Master Slack* criteria renders its decision unenforceable. In any event, J.G. Kern's failure to provide its confidential cost information to the Union played no role in the employees' decertification petition and did not justify the Board's bargaining order here.

---

[7] The Board further erred in "additionally not[ing]" that the ALJ's finding that J.G. Kern violated the NLRA is "supported by the fact that (1) the Respondent's email specifically linked the refusal to consider union-administered benefit plans to its unlawful refusal to furnish employer cost information for benefit plans." (*See* JA277; NLRB Dec. 1 n.1). To the contrary, as discussed above, J.G. Kern did not unlawfully refuse to consider the union's proposals.

### 3. Even if Unfair Labor Practices Occurred During the Bargaining Process, J.G. Kern's Decision to Withdraw Recognition from the Union at the End of the Certification Year Was Lawful under *Master Slack*

Summarizing the foregoing application of *Master Slack* to the facts of this case, had the Board properly applied its precedent here, it should have found J.G. Kern's withdrawal of recognition from the Union to be lawful based on the expressed wishes of the overwhelming majority of its employees. J.G. Kern's alleged unfair labor practices occurred between four and ten months prior to the withdrawal of recognition; and the Board has declined to find taint based on similar time gaps. *See, e.g.*, *Champion Home Builders*, 350 NLRB at 791-92; *Garden Ridge Mgmt.*, 347 NLRB at 134; *Lexus of Concord, Inc.*, 343 NLRB at 852. Further, J.G. Kern's unfair labor practices, if they occurred at all, were unlike the types of unfair labor practices that the Board has concluded have a "detrimental or lasting effect on employees," such as the discipline of union supporters or unilateral changes in the terms and conditions of employment. (*See* JA293; NLRB Dec. 17 (Dissent)); *see also Tenneco Auto.*, 716 F.3d at 650.

Finally, "[t]here is no evidence that [J.G. Kern's] unfair labor practices had any effect on employee morale, organizational activity, or membership." (*See* JA294; NLRB Dec. 18 (Dissent)). To the contrary, the employees' support of the Union was "not overwhelming" even before the bargaining began. (*See* JA295; NLRB Dec. 19 (Dissent)). Accordingly, had the Board properly applied controlling

precedent *Master Slack*, it should have concluded that J.G. Kern did not violate the NLRA in withdrawing recognition from the Union.

**B.    The Board's Decision to Apply *Whisper Soft* to Retroactively Extend the Certification Year, Instead of Applying the Later Decided, Contrary Precedent of *Master Slack*, Violated this Court's Precedents and the APA**

**1.    Applying *Whisper Soft* Without Overruling *Master Slack* Creates "Two Lines" of Inconsistent Precedent, Contrary to the APA**

The sole reason given by the Board for not adhering to *Master Slack*'s requirements in this case was the Board's erroneous claim that it could rely instead on the discredited case known as *Whisper Soft,* a case inconsistent with and decided prior to *Master Slack.* Over the strong objection of the dissenting opinion, the Board majority found "there is no inconsistency" between the two rulings, and that "they represent different, independent inquiries" that are "not mutually exclusive." (*See* JA279-80; NLRB Dec. 4 & n.12). The Board's holding is wrong and should not be enforced under this Court's precedents. As explained by Member Ring, "*Master Slack* only applies if the presumption of majority status was rebuttable at the time recognition was withdrawn. But if *Whisper Soft* is applied, majority status becomes irrebuttably presumed, rendering *Master Slack* inapplicable." (*See* JA288; NLRB Dec. 12 (Dissent)). Contrary to the Board's opinion, the two precedents cannot be reconciled, and the Board certainly has not done so in the decision now under review.

26

The cases that the Board cited for its contention that *Master Slack* and *Whisper Soft Mills* are not inconsistent—*Veritas* and *Brooks*—do not support the Board's claim. (*See* JA279-80; NLRB Dec. 4 & n.14). As discussed above, this Court's *Veritas* decision did not involve a retroactive extension of the certification year; instead it dealt only with an extension of the certification year by a prior Board and court order. *See Veritas*, 895 F.3d at 78-81. And while the Board contends that *Brooks v. NLRB* is relevant, (*see* JA281NLRB Dec. 5 n.14), it is not clear how. There, the Supreme Court upheld a Board decision that faulted an employer for refusing to bargain with a union during the original certification year (not an extended certification year). *See Brooks v. NLRB*, 348 U.S. 96, 97, 103-04 (1954); *see also Brooks*, 98 NLRB 976, 978 (1952). Here, of course, J.G. Kern did not withdraw recognition from the Union until after the original certification year had passed. *See supra*, Parts VIII.A.1, IV.A.

As further noted above, the Board has previously applied *Master Slack* in circumstances that are not meaningfully distinguishable from this case. For example, in *Champion Home Builders, Co.*, the Board applied *Master Slack* when the employer withdrew recognition of the union after the certification year, even though, like here, the employer did not meet with the union during the first three months following its certification. *See Champion Home Builders Co.*, 350 NLRB 788. Similarly, in *Garden Ridge Management*, the Board applied *Master Slack* after an

employer withdrew recognition of a union after the certification year expired, even though the employer violated the NLRA by unreasonably failing to meet with the union to bargain. *See Garden Ridge Mgmt.*, 347 NLRB at 134.[8]

The Board failed to distinguish *Champion Home Builders* or *Garden Ridge Management* from this case, even though the Dissent highlighted the two cases. (JA288; NLRB Dec. 12 (Dissent)). Under similar circumstances in *Windsor Redding Care Ctr., LLC v. NLRB*, 944 F.3d 294, 300 (D.C. Cir. 2019), this Court required the Board to '"engage the arguments before it," including those of a dissenting Member,' so long as those arguments are not so frivolous as to be 'unworthy of consideration.'") (internal citations omitted). Here, the Board simply claimed to have applied a "different (but not inconsistent) analysis" in the prior cases; yet the Board did not provide any reasoned explanation for how *Master Slack* and *Whisper Soft Mills* are consistent with each other, rendering the Board's reasoning conclusory. (*See* JA281; NLRB Dec. 5); *see also Rav Truck & Trailer Repairs v. NLRB*, 997 F.3d 314, 328 (D.C. Cir. 2021) (rejecting Board's statement as

---

[8] *See also Denton County Electric Coop., Inc.*, 366 NLRB No. 103, at *8 (applying *Master Slack* where employer withdrew recognition after certification bar expired, even though employer violated the NLRA during certification period); and *Tritac Corp.*, 286 NLRB at 537-40 (applying *Master Slack* where employer withdrew recognition of union following certification year, even though it violated the NLRA during the certification year).

"inadequate" and "conclusory" when it cited to case law but did not explain how the case law supported its finding).

The Board's suggestion that *Master Slack* applied in *Champion Home Builders* and *Garden Ridge Management* because the General Counsel never raised *Whisper Soft* in those cases does not salvage the Board's reasoning. (*See* JA281; NLRB Dec. 5). Were *Whisper Soft* the correct standard (and *Master Slack* the wrong standard) to apply, the Board should have applied it in each of the cited cases. *See MCPc Inc. v. NLRB*, 813 F.3d 475, 490 n.12 (3d Cir. 2016). But in none of the prior cases, on substantially similar facts, did the Board apply *Whisper Soft*, until now.

The Board's decision provides no insight into whether *Master Slack* or *Whisper Soft* will apply in analogous circumstances going forward. In other words, by concluding that either *Master Slack* or *Whisper Soft* may apply in the future, the Board has erroneously created "two lines" of inconsistent precedent, which this Court has recently faulted the Board for doing in analogous circumstances in *Communications Workers of America v. NLRB*.

In *Communications Workers of America*, the Board considered the standard for determining whether a group of employees constitutes a labor organization under the NLRA, and specifically considered what it means for an organization to be "dealing with" an employer. *Commc'ns Workers of Am.*, 994 F.3d 653, 659 (D.C. Cir. 2021). The Board, upon review of various cases, concluded that an organization

engages in "dealing with" an employer if it makes "group proposals." *See id.* at 660-62. Yet, the petitioner pointed to other Board precedent finding groups were "dealing with" employers *without* requiring "group proposals." *See id.* at 662.

This Court concluded that "the 'group proposals' requirement [was] in tension with the cases cited by [the petitioner]." *See id.* at 663. The Court further noted that it was "left uncertain about what the record must show for the Board to find that an organization made group proposals." *See id.* The Court ultimately concluded that "the Board need[ed] to identify what standard the Board has adopted for separating 'group proposals' from proposals of employee representatives," and remanded the matter to the Board. *See id.* at 663-64.

Here, just like the petitioner in *Communications Workers of America,* J.G. Kern has identified precedent—*Champion Home Builders* and *Garden Ridge Management*—that runs contrary to the Board's conclusion that the certification year automatically extends when an employer engages in bargaining-related unfair labor practices. *See id.* at 662. Accordingly, the Board's finding here that *Whisper Soft* and *Master Slack* may coexist similarly "le[aves] uncertain…what the record must show" for the Board to find that *Whisper Soft Mills* or *Master Slack* applies. *See id.* at 663. As such, the Board here has erred, much like how the Board in *Communications Workers of America* erred, in failing to "identify what standard [it]

has adopted" for assessing the legality of an employer's decision to withdraw recognition from a union. *See id.* at 663-64.

Notably, the Board has acknowledged that its Decision may not provide clarity for regulated parties by openly rejecting the "suggestion" that it should adopt a theory that allows employers to "more easily calculate whether a unilateral withdrawal of recognition will be upheld by the Board." (*See* JA281; NLRB Dec. 5 n.15). Such a deliberate refusal to clarify the agency's standards is not reasoned decision making and is grossly unfair to the regulated community. *See The Daily News*, 979 F.2d at 1578 (rejecting the "random use" of precedent). Accordingly, given that the Board has incorrectly concluded that *Master Slack* and *Whisper Soft Mills* may somehow coexist as two alternate standards going forward, the Board has failed to engage in reasoned decision making.

"A Board decision does not rest on reasoned decision making if 'it fails to offer a coherent explanation of agency precedent.'" *Commc'ns. Workers of Am.*, 994 F.3d at 658. The Board cannot justify a deviation from precedent by relying on a prior decision that also deviated from precedent. *See ABM Onsite Servs.-West, Inc.*, 849 F.3d at 1146-48. This Court has repeatedly declined to enforce Board findings that deviate from precedent without a reasoned explanation. *See, e.g.*, *Leggett & Platt, Inc. v. NLRB*, 988 F.3d 487, 494 (D.C. Cir. 2021); *Circus Circus Casinos, Inc.*, 961 F.3d at 479 (denying Board's application for enforcement where Board

31

incorrectly applied controlling legal standard); *CNN Am., Inc.*, 865 F.3d at 764; *The Daily News*, 979 F.2d at 1578 (denying enforcement where the Board's finding "raise[d] conflicts with its precedents").

It is also settled law that when the Board announces a new standard, "the Board must 'display awareness that it *is* changing position.'" *See Circus Circus Casinos, Inc.*, 961 F.3d at 475-76 (emphasis in original) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Conclusory reasoning from the Board is not reasoned decision making. *See Rav Truck & Trailer Repairs*, 997 F.3d at 328; *see also Everport Terminal Servs.*, 47 F.4th at 793. Along these lines, Board findings that fail to reconcile "two lines" of precedent are unenforceable. *See Commc'ns Workers of Am.*, 994 F.3d at 655.

### 2. The Board Further Erred in Relying on *Whisper Soft* Because the Ninth Circuit Reversed and Vacated the Board's Decision and Order in That Case

Board findings that rely on vacated precedent are generally considered unenforceable. *See NLRB v. New Vista Nursing & Rehab.*, 870 F.3d 113, 133-34 (3d Cir. 2017) ("By relying on a vacated NLRB precedent . . . the Board applied the wrong legal standard."); *see also Action on Smoking & Health v. Civil Aeronautics Board*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To 'vacate' . . . means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'"). In relying on *Whisper Soft*

in the present case, the Board improperly relied on vacated precedent. *See Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1388 (9th Cir. 1984) ("The decision of The National Labor Relations Board is reversed and its order is vacated."). [9]

The Board has argued in its Order Denying Reconsideration that despite the Ninth Circuit's decision, *Whisper Soft* remains valid precedent because the Ninth Circuit reversed the decision without passing on the issue presented here, i.e., the legality of a retroactive extension of the certification year. (JA309; NLRB Dec. on Reconsideration, at 2). But following the Ninth Circuit's decision—in which the Ninth Circuit concluded that the certification year should not have extended because the employer did not commit the unfair labor practice at issue—the Board's discussion of a retroactive extension of the certification year no longer constituted "the result" of the case or a "portion[] of the opinion necessary to that result." *Int'l Union, Sec. Police & Fire Professionals of Am. v. Faye*, 828 F.3d 969, 974 (D.C. Cir. 2016).

---

[9] Although the Board has attempted to distinguish *New Vista Nursing & Rehabilitation* in its Order Denying Reconsideration, (*see* JA310; NLRB Dec. on Recons. 3 n.5), the Third Circuit specifically faulted the Board for following vacated precedent instead of the correct legal standard. *See New Vista Nursing & Rehab.*, 870 F.3d at 134. In any event, the Board's contention that the Third Circuit found its order deficient not because it was vacated, but because it was inconsistent with Third Circuit precedent, does not help the Board here, as *Whisper Soft*, even if not vacated or reversed, is likewise inconsistent with this Circuit's precedent. *See supra* Part VIII.A.1.

33

The Board's argument in its Order Denying Reconsideration that *Whisper Soft* remains valid precedent under the Board's "long-established practice of non-acquiescence" is therefore unpersuasive. (JA309; NLRB Dec. on Recons. 2 n.5). The Board never sought certiorari to the Supreme Court following the Ninth Circuit's rulings in *Whisper Soft*. (*See id*.). This Court has concluded that the Board does not act in good faith when it declines to acquiesce to appellate rulings without first seeking certiorari. *See Heartland Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16, 23-24 (D.C. Cir. 2016).

The Board has further argued that it relied on *New Madrid Nursing Center*, 1997 NLRB LEXIS 259 (1997), in addition to *Whisper Soft*, in retroactively extending the certification year here. But the Board's newfound reliance on *New Madrid Nursing Center* does not salvage the Board's decision here. *New Madrid Nursing Center*, which (unlike *Whisper Soft*) postdated *Master Slack*, never cited to *Master Slack* and did not explain why *Master Slack* did not apply. *See generally New Madrid Nursing Ctr.*, 1997 NLRB LEXIS 259, at *1-37. The Board "cannot justify a departure from its precedent simply by pointing to another one of its cases that departed from precedent, if that other case does not itself announce the new standard or a supporting rationale for it." *See ABM Onsite Servs.-West, Inc.*, 849 F.3d at 1146-47. Accordingly, the Board erred in applying either *Whisper Soft* or *New Madrid* to retroactively extend the certification year in its Decision; they are not good law and

are inconsistent with *Master Slack*, which has been repeatedly endorsed by the Board and this Court.

### 3.    Other Cases Relied on by the Board for its Retroactive Extension of the Certification Year in This Case Are Inapposite

In addition to relying on *Whisper Soft*, the Board has attempted to construe its retroactive extension of the certification year as being consistent with other precedent. The additional cases cited in the Board decision(s) do not support the Board's theory that a certification year should automatically and retroactively extend absent a prior remedial order.

Thus, the Board decision erred in citing to this Court's *Veritas* decision as support for a retroactive extension of the certification year. (JA279; NLRB Dec. 3 n.11). As noted above, *Veritas* involved an employer who erroneously withdrew recognition from a union during a certification year that had *already been extended* via a prospective remedial order to start on "the date the [employer] beg[a]n[] to bargain in good faith with the Union." *See Veritas*, 895 F.3d at 80; *see also Veritas Health Servs. Inc.*, 356 NLRB No. 137 (2011). The Board and the employer simply disagreed on the date the extended certification year began under the remedial order. *See Veritas*, 895 F.3d at 80. Because the Board concluded that the employer was wrong about the date the remedially extended certification year began, the Board

also concluded that the employer improperly withdrew recognition of the union during the previously extended certification year. *See id.*

Thus, *Veritas* is dissimilar from the present case and offers no support for the Board's failure to apply the *Master Slack* standard. J.G. Kern, unlike the employer in *Veritas*, cannot be justly accused of ignoring an extension of the certification year pursuant to a prior remedial order of the Board, because here there was no prior remedial order extending the certification year.

The Board also cited to *Bryant & Stratton* as support for its retroactive extension of the certification year. (JA279; NLRB Dec. 3 nn.12). Yet once again, *Bryant & Stratton* involved a prior remedial order extending the certification year. In *Bryant & Stratton*, an ALJ concluded on June 23, 1994 that the employer had violated the NLRA and ordered an extension of the union's certification year, which the Board subsequently adopted on August 23, 1996. *See Bryant & Stratton*, 140 F.3d 169, 173-74 (2d Cir. 1998); *see also Bryant & Stratton Bus. Inst.*, 321 NLRB 1007 (1996). The Board ordered prospective relief: namely, that the employer stop refusing to meet with the union and that the employer should "[o]n request, bargain collectively" with the union. *See Bryant & Stratton*, 321 NLRB at 1009-10. Only because the employer "was obligated to comply with the Board's order . . . to extend the [u]nion's certification and the consequences flowing therefrom," the Second Circuit concluded that *Master Slack* did not apply. *See Bryant & Stratton*, 140 F.3d

36

at 187. J.G. Kern here, unlike the employer in *Bryant & Stratton*, did not ignore a remedial Board order when it withdrew recognition of the Union.

In the present case, the Board further relied on *Mar-Jac Poultry Co. Inc.*, *NLRB v. Commerce Co.*, and *Lamar Hotel* to support its position that *Whisper Soft* applied, yet these cases do not explain the Board's deviation from *Master Slack*, because all three cases predate both *Whisper Soft* and *Master Slack*. (*See* JA279-80; NLRB Dec. 3-4 n.13). Moreover, unlike what the Board did here by allowing the certification year to retroactively continue, (*See id.*), the Board in *Mar-Jac* prospectively extended the certification year by granting the union additional time for bargaining to start on a set date in the future, *see Mar-Jac Poultry Co. Inc.*, 136 NLRB 785, 786-87 (1962). Similarly, the Board in *Lamar Hotel* once again issued prospective relief, "grant[ing] . . . the Union an additional period of 6 months from the resumption of negotiations." *Lamar Hotel*, 137 NLRB 1271, 1272-73 (1962). And *Commerce Co.*, which contains only one page of analysis, does not specify when the additional bargaining period would occur. *See NLRB v. Commerce Co.*, 328 F.2d 600, 601 (5th Cir. 1964).

This Court has concluded that the Board's reasoning is arbitrary and capricious when it cites to precedent but does not correctly apply it, as is the case here with the Board's citations to *Veritas*, *Bryant & Stratton*, *Mar-Jac*, *Lamar Hotel*, and *Commerce Co. See Circus Circus Casinos*, 961 F.3d at 175-76 (rejecting the

Board's reasoning where the Board "[p]urport[ed] to apply" Board precedent but instead "misapplied" it); *see also Hawaiian Dredging Constr. Co., Inc.v. NLRB*, 857 F.3d 877, 885 (D.C. Cir. 2017) (declining to enforce finding where Board cited to current law but did "not adequately engage[] the record evidence" under current law). Accordingly, given that Board precedent does not support the Board's application of *Whisper Soft* to retroactively extend the certification year, the Board erred in applying *Whisper Soft* in its Decision.

### 4. That the Union Filed Unfair Labor Practice Charges Against J.G. Kern Does Not Make This Case Analogous to Those Involving a Prospective Extension of the Certification Year by Prior Remedial Order

The Board's contention that the Union's unfair labor practices charges should have placed J.G. Kern on notice of an extended certification year, (*see* JA279; NLRB Dec. 3 n.13), does not make this case analogous to *Veritas*, *Bryant & Stratton*, or any others where the Board previously extended the certification year by remedial order or otherwise justify the Board's deviation from controlling precedent. The mere occurrence of unfair labor practices does not automatically render an employer's withdrawal of recognition of a union unlawful under current Board precedent. *See Tenneco Auto.*, 716 F.3d at 640. Indeed, a conclusion to the contrary would overrule *Master Slack*; yet the Board did not overrule *Master Slack,* nor should this Court. (*See* JA282; NLRB Dec. 6).

38

Moreover, the fact that the Union filed unfair labor practice charges did not mean that J.G. Kern had violated the NLRA; the charges only meant that the Union believed J.G. Kern had violated the NLRA. A belief that an employer violated the NLRA, without an express finding from the Board, "falls short of satisfying the substantial evidence standard." *See BPH & Co. v. NLRB*, 333 F.3d 213, 222 (D.C. Cir. 2003).

Indeed, requiring employers to proceed as though they have violated the NLRA every time a union files an unfair labor practice charge[10] would create perverse incentives for unions at the expense of employees' rights. Under the Board's logic, a union could extend the certification bar indefinitely by filing unfair labor practice charges, which would infringe on employees' Section 7 rights to reject a union. *See* 29 U.S.C. § 157 (describing right of employees to "refrain" from concerted activities). This Court has recently faulted the Board for attempting to alter precedent "without accounting for employee choice, a central policy of the NLRA." *See Circus Circus Casinos*, 961 F.3d at 478. Accordingly, because the Union's unfair labor practice charges are unlike a prior remedial order prospectively

---

[10] To the extent that the Board is concerned with the amount of time that it takes the Board to adjudicate unfair labor practice charges, the correct procedure for the Board is to seek injunctive relief under Section 10(j) of the NLRA, not require employers to proceed as though they are guilty of unfair labor practices whenever the Union files a charge. *See* 29 U.S.C. § 160(j).

extending the certification year, Board precedent once again does not support the Board's application of *Whisper Soft* to retroactively extend the certification year.

> **5.** **The Board's Adoption of a Novel Theory Not Advocated by the General Counsel Caused a Manifest Injustice and/or Violated J.G. Kern's Due Process Rights**

In finding that J.G. Kern violated the NLRA by withdrawing recognition of the Union based upon *Whisper Soft*, and not *Master Slack*, the Board "deviated from the General Counsel's theory of the case." (*See* JA281; NLRB Dec. 5). Specifically, the General Counsel exclusively relied on *Master Slack* and never cited *Whisper Soft* or *New Madrid Nursing Center*. (*See* JA269; GC Br. 15 (citing only the *Master Slack* standard)). In addition, because the Board refused to acknowledge it has effectively overruled or significantly modified *Master Slack*, the Board further erred in failing to consider whether its rejection of *Master Slack* in the present case caused a manifest injustice. For these reasons as well, the Board's decision should be denied enforcement.

The Board's own precedent required the agency to consider whether its departure from precedent creates a manifest injustice here. *See Loomis Armored US, Inc.*, 364 NLRB No. 23, at *31-33 (2016). In considering whether a "manifest injustice" will occur, "the Board considers the reliance of the parties on preexisting law, the effect of retroactivity on accomplishment of purposes of the [NLRA], and any particular injustice arising from the retroactive application." *Id.* at *31. The

Board engaged in no such analysis in its Decision and rejected the argument in J.G. Kern's motion for reconsideration in a conclusory fashion.

Moreover, because of the Board's deviation from the exclusive basis for the complaint tried to the ALJ, J.G. Kern "never had an opportunity to defend itself" against the Board's departure from *Master Slack* before the Board issued its Decision, as the application of *Whisper Soft* "was not an issue in the case that was tried before the ALJ." *See Bellagio, LLC*, 854 F.3d at 713. Had J.G. Kern understood that *Whisper Soft* would be "invoked" for the first time in decades, the Petitioner could have explained why it believed it was lawful to withdraw recognition from the Union when it did or it could have presented case law explaining why *Whisper Soft* should not apply. *Compare* JA279; NLRB Dec. 3, *with Bellagio*, 854 F.3d at 713 (noting that the presentation of the employer's case could have changed had it known "that it might be found liable" in an unexpected way).

Accordingly, as the Board infringed on J.G. Kern's due process rights and has created a manifest injustice, the Court should decline to enforce the Board's finding that J.G. Kern violated the NLRA by withdrawing recognition from the Union.

### C. This Court Should Not Enforce the Affirmative Bargaining Order that the Board Issued Because in Issuing It, the Board Ignored Substantial Record Evidence and Deviated from Precedent

Because the Board ignored substantial record evidence and deviated from this Court's precedent in issuing an affirmative bargaining order, this Court should not

enforce the affirmative bargaining order, which here, requires J.G. Kern to bargain with the Union for six months for forty hours per month "for at least 8 hours per session." (*See* JA282; NLRB Dec. 6n.19). Although the Board purported to engage in the three-factor analysis that this Court requires, the Board's analysis is conclusory and does not take employees' Section 7 rights to reject representation into account. (*Contra* JA283; NLRB Dec. 8 n.20); *see also Rav Truck & Trailer Repairs*, 997 F.3d at 328 (rejecting conclusory reasoning from the Board).

An affirmative bargaining order is an order that couples a decertification bar with an order to bargain. (JA282; NLRB Dec. 6); *see also Scomas v. Sausalito, LLC v. NLRB*, 849 F.3d 1147, 1155-56, 1158 (D.C. Cir. 2017) (vacating affirmative bargaining order and explaining that the affirmative bargaining order "is not a snake-oil cure for whatever ails the workplace" and is appropriate only where an employer commits a "hallmark violation" of the NLRA) (internal citations omitted); *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 738 (D.C. Cir. 2000) ("This court repeatedly has reminded the Board that an affirmative bargaining order is an extreme remedy").

Along these lines, this Court requires the Board to justify any affirmative bargaining order with an analysis explicitly balancing three factors:

> (1) [T]he employees' § 7 rights [of self-organization and collective bargaining]; (2) whether other purposes of the [NLRA] override the rights of employees to choose their bargaining representatives; and (3)

whether alternative remedies are adequate to remedy the violations of the [NLRA].

*See CNN Am., Inc.*, 865 F.3d at 764 (quoting *Vincent Indus. Plastics, Inc.*, 209 F.3d 727, 738 (D.C. Cir. 2000)).

In the present case, the Board concluded that an affirmative bargaining order (and with a set bargaining schedule) "vindicate[s]" the Section 7 rights of employees "who were denied the benefits of collective bargaining during the initial certification year." (*See* JA283; NLRB Dec. 7). This reasoning ignores the fact that no such denial occurred; J.G. Kern and the Union bargained and reached tentative agreement on thirty-five items. (*See* JA286; NLRB Dec. 10 (Dissent)). As a result, substantial evidence does not support the Board's finding on the first factor. *See Everport Terminal Servs.*, 47 F.4th at 793; *Fred Meyer Stores, Inc.*, 865 F.3d at 638; *see also Allentown Mack Sales & Serv.*, 522 U.S. at 377-78.

The Board further ignored the rights of employees to reject union representation. (*See* JA291; NLRB Dec. 15 (Dissent)); *see also Leggett & Platt, Inc. v. NLRB*, 988 F.3d 487, 494 (D.C. Cir. Feb. 19, 2021) (noting that an affirmative bargaining order may "punish[] employees by depriving them of their right to choose their own representatives" due to employer conduct). Moreover, the Board's reasoning simply reiterates the basis for the Board's finding that J.G. Kern violated the NLRA, which "does not take the present case outside of the norm;" by the Board's logic, an affirmative bargaining order could follow any NLRA violation.

43

*See Leggett & Platt, Inc.*, 988 F.3d at 496; *see also Vincent Indus. Plastics, Inc.*, 209 F.3d at 738 (noting that although an ALJ cited to "serious and egregious misconduct" by the employer in support of an affirmative bargaining order, "[t]his will not do").

The Board's analysis also failed to show that the affirmative bargaining order "serve[s] the purposes and policies of the [NLRA]." (*See* JA283; NLRB Dec. 7). Although the Board emphasized that the affirmative bargaining order would promote industrial peace and benefit the Union, (*see* JA283-84; NLRB Dec. 7-8), this Court has already rejected nearly identical reasoning from the Board to justify an affirmative bargaining order under the second factor. *See Leggett & Platt, Inc.*, 988 F.3d at 496 ("Then the Board tells us, '(2) An affirmative bargaining order serves the purposes and policies of the [NLRA] by fostering meaningful collective bargaining and industrial peace, and by removing the Respondent's incentive to delay bargaining in the hope of further discouraging support for the Union.' . . . It is not clear how this sentence adds anything to this case not present in all other parallel cases.").

Finally, although the Board contended that a "cease-and-desist order alone would be inadequate to remedy . . . the bargaining violations and withdrawal of recognition," (*See* JA284; NLRB Dec. 8), this reasoning nevertheless does not support the imposition of an affirmative bargaining order, as this Court has once again already rejected a similar argument from the Board. *See Leggett & Platt, Inc.*,

44

988 F.3d at 496 ("Then the Board tells us . . . '(3) A cease-and-desist order alone would be inadequate to remedy the Respondent's withdrawal of recognition, refusal to bargain, and unilateral changes.' . . . Again, the Board is not telling us anything about this case that would not be true in all cases."). Accordingly, this Court should not enforce the affirmative bargaining order the Board ordered.

## IX.   CONCLUSION

For the reasons set forth above, J.G. Kern asks that its Petition for Review be granted and that the Board's Cross-Application for Enforcement be denied.

June 28, 2023                                Respectfully submitted,

*/s/ Maurice Baskin*
Maurice Baskin
Emily Carapella
Littler Mendelson, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
202-842-3400
mbaskin@littler.com
ecarapella@littler.com
*Attorneys for Petitioner J.G. Kern*
*Enterprises, Inc.*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to FRAP 27(d)(2) the Petitioner certifies that this brief contains 10,833 words of proportionally-spaced, 14-point type, and the word processing system used was Microsoft Word.

*/s/Maurice Baskin*
Maurice Baskin

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Petitioner's Final Brief was electronically transmitted to the Court this 28th day of June, 2023, using the Court's ECF filing system, and was served on all counsel via electronic notice pursuant thereto.

*/s/Maurice Baskin*
Maurice Baskin

# STATUTORY ADDENDUM

SECTION 7 OF THE NLRA ..........A-**ERROR! BOOKMARK NOT DEFINED.**

SECTION 8 OF THE NLRA ..........A-**ERROR! BOOKMARK NOT DEFINED.**

SECTION 10 OF THE NLRA ............................................................................ A-1

SECTION 554 OF THE APA ........................................................................... A-3

SECTION 706 OF THE APA ........................................................................... A-5

**Section 7 of the NLRA, 29 U.S.C. § 157**:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

**Section 8 of the NLRA, 29 U.S.C. § 158**:

**(a) Unfair labor practices by the employer**

It shall be an unfair labor practice for an employer—

**(1)** to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

**(5)** to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

**Section 10 of the NLRA, 29 U.S.C. § 160:**

**(e) Petition to court for enforcement of order; proceedings; review of judgment**

The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in

vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

**(f) Review of final order of Board on petition to court**

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the

clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

**Section 554 of the APA, 5 U.S.C. § 554:**

**(a)** This section applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, except to the extent that there is involved—

**(1)** a matter subject to a subsequent trial of the law and the facts de novo in a court;

**(2)** the selection or tenure of an employee, except a administrative law judge appointed under section 3105 of this title;

**(3)** proceedings in which decisions rest solely on inspections, tests, or elections;

**(4)** the conduct of military or foreign affairs functions;

**(5)** cases in which an agency is acting as an agent for a court; or

**(6)** the certification of worker representatives.

**(b)** Persons entitled to notice of an agency hearing shall be timely informed of—

**(1)** the time, place, and nature of the hearing;

**(2)** the legal authority and jurisdiction under which the hearing is to be held; and

**(3)** the matters of fact and law asserted.

When private persons are the moving parties, other parties to the proceeding shall give prompt notice of issues controverted in fact or law; and in other instances

agencies may by rule require responsive pleading. In fixing the time and place for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives.

**(c)** The agency shall give all interested parties opportunity for—

**(1)** the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and

**(2)** to the extent that the parties are unable so to determine a controversy by consent, hearing and decision on notice and in accordance with sections 556 and 557 of this title.

**(d)** The employee who presides at the reception of evidence pursuant to section 556 of this title shall make the recommended decision or initial decision required by section 557 of this title, unless he becomes unavailable to the agency. Except to the extent required for the disposition of ex parte matters as authorized by law, such an employee may not—

**(1)** consult a person or party on a fact in issue, unless on notice and opportunity for all parties to participate; or

**(2)** be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.

An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings. This subsection does not apply—

**(A)** in determining applications for initial licenses;

**(B)** to proceedings involving the validity or application of rates, facilities, or practices of public utilities or carriers; or

**(C)** to the agency or a member or members of the body comprising the agency.

A-4

**(e)** The agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty.

### Section 706 of the APA, 5 U.S.C. § 706:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(B)** contrary to constitutional right, power, privilege, or immunity;

**(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)** without observance of procedure required by law;

**(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.